IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Shirley A Young, | ) | Civil Action No. 8:13-cv-00365-MGL-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter was previously before the Court for a Report and Recommendation pursuant to and 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth in the Report and Recommendation dated July 17, 2014, the undersigned recommended that the decision of the Commissioner be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation. [Doc. 23.] Specifically, the undersigned found that new evidence submitted by the Plaintiff contradicted the ALJ's decision and that the Appeals Council failed to consider evidence from 2012. [*Id.* at 31–32.] The Commissioner filed objections explaining that "the Magistrate Judge's Report . . . appears to rest on a mis-impression of the basis for the Appeals Council's denial of review" and that remand would be pointless in the absence of

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

a finding that Plaintiff's impairments meet Listing 1.04. [Doc. 27 at 4.] The Commissioner provided an affidavit from the Acting Chief of Court Case Preparation and Review Branch 2 of the Office of Appellate Operations, Office of Disability Adjudication and Review, Social Security Administration, explaining that the evidence from 2012 was never made a part of the record before the Court, and was returned to Plaintiff for use in a new claim, because it pertained to a later time. [Doc. 27-1 at ¶ 3(c).] The District Judge, thus, declined to adopt the Report and Recommendation and asked the undersigned to reconsider the issues surrounding the newly submitted evidence from 2012. [Doc. 30.] Upon reconsideration, and in light of the Commissioner's explanation of the new evidence considered, the undersigned recommends that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On September 24, 2009, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of November 28, 2008. [R. 109–15.] The claim was denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 99–103.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on June 3, 2011, ALJ Ivar E. Avots conducted a de novo hearing on Plaintiff's claims [R. 35–63].

The ALJ issued a decision on August 26, 2011, finding that Plaintiff has not been under a disability as defined by the Act from November 28, 2008, through the date of the decision. [R. 16–34.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2014, and had

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

not engaged in substantial gainful activity since November 28, 2008, the alleged onset date.  [R. 21, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: status post rotator cuff surgery and motor vehicle accident, degenerative joint and disc disease of the legs and back, and obesity.  [R. 21, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 23, Finding 4.]  The ALJ specifically considered Listing 1.02 with respect to Plaintiff's rotator cuff surgery; Listing 1.04 with respect to Plaintiff's back and cervical impairments; and SSR 02-1p in analyzing Plaintiff's obesity.  [R. 23.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the residual functional capacity ("RFC")

> to perform a range of medium work as defined in 20 CFR 404.1567(c). I specifically find the claimant can lift/carry 25 pounds frequently and 50 pounds occasionally. She can sit, stand and walk for six hours, each, of an eight hour workday. The claimant is able to occasionally climb ropes, ladders and scaffolds and can occasionally crawl. She can frequently climb, crouch, kneel, balance and stoop. Also, the claimant can frequently engage in reaching overhead with her right upper extremity.

[R. 23–24, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was capable of performing her past relevant work as a candle molder and a spinner. [R. 29, Finding 6.] On this basis, the ALJ found Plaintiff has not been under a disability, as defined in the Act, from November 28, 2008, through the date of the ALJ's decision.  [R. 29, Finding 7.]  Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined review.  [R. 1–7.]  Plaintiff filed this action for judicial review on February 9, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1.    the ALJ's discussion of Plaintiff's manipulative limitations was inadequate to support his RFC determination [Doc 18 at 16–18];

2.    the ALJ did not give logically or legally sufficient reasons for discounting treating physicians' opinions [*id.* at 19–24];

3.    the ALJ improperly inferred that Plaintiff was not impaired due to her failure to obtain treatment or comply with treatment recommendations, despite evidence fo financial obstacles  [*id.* at 24–25]; and

4.    the Appeals Council failed to consider new evidence which supports treating physicians' opinion  [*id.* at 26–27].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that

1.    the ALJ's determination of Plaintiff's RFC is supported by substantial evidence [Doc. 20 at 6–9];

2.    the ALJ properly evaluated treating physicians' opinions, finding them inconsistent with the longitudinal medical record  [*id.* at 9–13];

3.    the ALJ properly considered the conservative nature of Plaintiff's treatment [*id.* at 13–16]; and

4.    the Appeals Council properly determined that the new evidence submitted by plaintiff did not warrant a change in the ALJ's decision treatment [*id.* at 16–19].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

4

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,*

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals

the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

**D.**     ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the

statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65

F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[4] with the physical and mental demands of the kind

of work he has done in the past to determine whether the claimant has the residual

functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

**E.**     ***Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d

31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the

Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the

"grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

11

from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404,

Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir.

1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to perform

other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have

found that the grids cannot be relied upon to show conclusively that claimant is not

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove

by expert vocational testimony that despite the combination of exertional and nonexertional

impairments, the claimant retains the ability to perform specific jobs which exist in the

national economy.").  The purpose of using a vocational expert is "to assist the ALJ in

determining whether there is work available in the national economy which this particular

claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to

be relevant, "it must be based upon a consideration of all other evidence in the record, . .

. and it must be in response to proper hypothetical questions which fairly set out all of

claimant's impairments."  *Id.* (citations omitted).

_____

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783

F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant

issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important

when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.*

(internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's

impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion

does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless

assign a weight to the medical opinion based on the 1) length of the treatment relationship

and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5)

specialization of the physician; and 6) other factors which tend to support or contradict the

opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v.*

14

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.

Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> 
> ...
> 
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,

16

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Brief Medical History**

17

Plaintiff saw Dr. David M. Keith ("Dr. Keith") on August 27, 2008, with complaints of extreme right shoulder pain.  [R. 226.]  Dr. Keith's notes detailed that Plaintiff's work as a candle maker required her to lift a wax pitcher above the level of her thorax many times per day which exacerbated the fact that she most likely had a rotator cuff problem.  [*Id.*]  Dr. Keith also indicated that Plaintiff is "in her 50's and has reached a point at which she can not do overhead work with weight" and gave Plaintiff a doctor's note for her employer setting out specific restrictions for Plaintiff's physical exertions.  [*Id.*]    Dr. Douglas J. Wyland ("Dr. Wyland"), of Steadman Hawkins, ordered an MRI of Plaintiff's right shoulder, which Plaintiff underwent on October 8, 2008. [R. 239.]  Dr. Jeffrey Wienke, who performed the MRI, noted Plaintiff's rotator cuff had a "full thickness tear involving the supraspinatus tendon fibers anteriorly," a "partial thickness tearing of the posterior supraspinatus tendon fibers along 50% of the articular surface," and "some mild partial thickness tearing noted along the articular surface of the anterior infraspinatus tendon fibers on the order of 50% thickness."   [R. 240.]    Dr. Wyland diagnosed Plaintiff with bilateral subacromial impingement with left shoulder partial thickness rotator cuff tear and explained to Plaintiff that she may need operative intervention.  [*Id.*]

On December 2, 2008, Dr. Wyland and Dr. Frederick Song performed surgery to repair Plaintiff's right shoulder rotator cuff tear plus subacromial impingement and biceps tenosynovitis.  [R. 236.]  Plaintiff began rehabilitation on December 9, 2008.  [R. 247.]  By February 16, 2008, Plaintiff reported being able to reach into her cabinets [*id.*] and by March 9, 2009, physical therapy notes indicate Plaintiff reported no pain.  [R. 242.]  Plaintiff's discharge summary dated March 23, 2009, after twenty-nine sessions of physical therapy,  indicated  her  functional  status  was  unknown  because  she  did  not  return  for

18

therapy. [R. 274.] Four months after her rotator cuff repair, on April 2, 2009, Plaintiff returned to Dr. Wyland "feeling well" and "not having any problems." [R. 276.] On examination, Dr. Wyland indicated Plaintiff

> exhibits full active range of motion of the shoulder however she does hike the shoulder a little bit demonstrating deltoid use as opposed to the supraspinatus on forward elevation. After working with her a little bit we can get her to reactivate her supraspinatus when she does forward elevation. She has good scapular control. She does not have any biceps signs and no pain. She has good strength all of the way around.

[*Id.*] Dr. Wyland noted Plaintiff's strength was excellent and her pain was minimal. [*Id.*] He did note, however, that she needed to "work a little bit on her technique and utilizing her supraspinatus at this point" and recommended a home exercise program. [*Id.*] Dr. Wyland indicated he would allow her to return to work with no restrictions. [*Id.*] Plaintiff was to return to Dr. Wyland as needed. [*Id.*]

On June 9, 2009, Plaintiff underwent a Physical RFC Assessment performed by Dr. Dale Van Slooten ("Dr. Van Slooten"), who found Plaintiff retained the ability to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; and push and/or pull in an unlimited amount other than shown for lift and/or carry. [R. 292.] With respect to postural limitations, Dr. Van Slooten noted Plaintiff could frequently climb ramps or stairs, balance, stoop kneel, and crouch, but could only occasionally climb ladders or ropes or scaffolds, and crawl. [R. 293.] With regard to manipulative limitations, Dr. Van Slooten wrote Plaintiff was limited in reaching in all directions, including overhead, but not limited in handling, fingering, or feeling. [R. 294.] He noted Plaintiff's right overhead reaching was limited to occasional

19

[*id.*], and because her physical therapy was ongoing, he projected she would be able to perform medium work with continued therapy and treatment [R. 292].

On October 9, 2009, Plaintiff presented to Dr. Keith with left knee pain. [R. 299.] Dr. Keith noted possible degenerative joint disease and talked to Plaintiff about a referral, but Plaintiff was unable to afford such a consultation. [*Id.*] An x-ray of Plaintiff's left knee was taken on October 13, 2009, which indicated no abnormalities. [R. 301–02.] On November 25, 2009, Plaintiff had another Physical RFC Assessment performed by Dr. Steven Fass ("Dr. Fass"). [R. 362–69.] Dr. Fass indicated Plaintiff retained the ability to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day; and push and/or pull in an unlimited fashion, other than as shown for lift and/or carry. [R. 363.] With respect to postural limitations, Dr. Fass noted Plaintiff could frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl, but should only occasionally climb ladders or ropes or scaffolds. [R. 364.] With regard to manipulative limitations, Dr. Fass found Plaintiff was limited in reaching in all directions, including overhead. [R. 365.] Dr. Fass wrote Plaintiff was limited to frequent right overhead reaching but had "no restriction on LUE." [*Id.*] Dr. Fass noted that though Plaintiff claimed "her shoulder [gave] out and [felt] asleep all the time," exams showed full range of motion and excellent strength; and while she reported knee pain, her exam was within normal limits and x-rays were normal. [R. 367.]

In March 2010, Plaintiff was involved in a car accident as a passenger in the front seat and, as a result, alleged pain in her neck, upper back, and right shoulder. [R. 371.] Radiology obtained two views of her right shoulder which showed no acute fracture,

20

moderate degenerative disease, and evidence of calcific bursitis or tendinitis. [R. 378.] On

a follow-up visit with Dr. Wyland, Plaintiff complained of increased pain in the cervical spine

as well as her trapezius and shoulder and complained of intermittent paresthesias in her

hand. [R. 379.] Dr. Wyland noted that "[e]xamination of the cervical spine reveals diffuse

paraspinal tenderness to palpation and spasm. She also has tenderness to palpation of

the trapezius. She has limited range of motion of her cervical spine secondary to pain.

Spurling's test is painful for her, but it does not cause any radicular-type symptoms." [*Id.*]

Examination of the right shoulder and arm revealed well-healed incisions; no atrophy; and

no discrete areas of tenderness to palpitation in the proximal biceps, AC, or anterolateral

aspect of the acromion. [R. 380.] Plaintiff also had "5/5 scaption strength as well as 5/5

internal and external rotation strength. No gross instability. Sensory motor function is intact

throughout the right upper extremity." [*Id.*] Additionally, Dr. Wyland noted

> Cervical spine x-rays as well as three-view x-rays of the right
> shoulder were viewed on the PAC system and taken today.
> These x-rays demonstrate mild disc space narrowing and
> osteophyte formation from C5 to C7. No fractures or mal-
> alignment identified. X-ray of the shoulder reveals the
> humerus is well seated on the glenoid. There is subtle
> evidence of osteolysis around the anchor sites. No evidence
> of glenohumeral arthritis.

[*Id.*] For treatment, Dr. Wyland sent Plaintiff back to "physical therapy to work on modalities

to decrease pain, range of motion, as well as traction of the cervical spine." [*Id.*]

On September 10, 2010, Dr. Hugh Clarke ("Dr. Clarke") performed a third Physical

RFC Assessment on Plaintiff. [R. 391–98.] During this assessment, Dr. Clarke found

Plaintiff retained the capacity to occasionally lift and/or carry 50 pounds; frequently lift

and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit about 6

hours in an 8-hour day; and push and/or pull in an unlimited fashion, other than as shown for lift and/or carry. [R. 392.] With respect to postural limitations, Dr. Clarke limited Plaintiff to frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, but occasional climbing of ladders or ropes or scaffolds. [R. 393.] With respect to manipulative limitations, Dr. Clarke found Plaintiff limited in reaching in all directions, including overhead; limited her right overhead reaching to frequent; and unlimited in handling, fingering, and feeling. [R. 394.] Dr. Clarke noted that, although Plaintiff alleged her shoulder gave out and felt asleep all the time, exams showed full range of motion and excellent strength. [R. 396.] Further, while she reported knee pain, her exams were within normal limits and x-rays were normal. [*Id.*] Dr. Clarke also addressed Dr. Keith's opinion that Plaintiff could not do overhead work with weight and noted that this opinion was prior to her surgical repair which showed good healing. [R. 397.] Moreover, Plaintiff had an excellent response to treatment. [*Id.*] Dr. Clarke reported that Dr. Wyland returned Plaintiff to work after her surgery with "no restrictions" [*id.*] and indicated she should be limited to medium work [R. 393].

In November 2010, Plaintiff returned to Dr. Keith with complaints of back pain. [R. 400.] On January 6, 2011, Plaintiff reported to Piedmont Imaging for an x-ray of her right knee  [R. 405], right hip [R. 406], and lumbar spine [R. 407].  The findings with respect to Plaintiff's knee indicated a "very small suprapatellar joint effusion; otherwise, unremarkable study." [R. 405.] Findings with respect to Plaintiff's right hip indicated "[q]uestionable narrowing of the weight-bearing portion of the bilateral hip joints; otherwise, unremarkable hip joints." [R. 406.] Findings with respect to Plaintiff's lumbar spine indicated "[m]oderately advanced degenerative disc disease at the L4-L5 level with mild degenerative

disc disease at the L3-L4 level. No other abnormalities recognized." [R. 407.] On January 18, 2011, Plaintiff reported to Piedmont Imaging for an MRI of her lumbar spine. [R. 403.] Afterwards, Plaintiff was diagnosed with multilevel degenerative disc disease with moderately advanced changes at the L4-L5 level, and multilevel acquired spinal encroachment which appeared to be slightly worse at the L5-S1 level, evidenced by the abutment of the exiting L5 nerve roots due to combined decreased disc height and facet joint hypertrophy. [R. 403–04.]

On March 21, 2011, Dr. Keith completed a questionnaire for purposes of disability assessment concerning Plaintiff. [R. 408.] Dr. Keith opined that Plaintiff was unable to engage in anything more than sedentary work on an 8 hour day, 5 day per week basis. [*Id.*] Dr. Keith indicated his opinion was based on Plaintiff's MRI, her physical exam, and the continued limitation of motion in her shoulder. [*Id.*] After Dr. Keith's assessment, Plaintiff was referred by her attorney to the Behavioral Health Center on April 27, 2011 to determine her reading ability. [R. 410.] Results of the Wide Range Achievement Test, Third edition, Reading sub-test resulted in a standard score of 66 and a grade equivalency of 4th grade. [R. 414.] The examiner, James Ruffling, Psy.D, noted the

> test score is lower than expected given her educational history, i.e., she received a high school diploma, with no intervening variables such as head trauma or neurological insult, that might account for a decline in cognitive or reading ability. It is the opinion of this examiner that Ms. Young has functional literacy and can likely read text such as newspaper articles, instruction manuals or inventory lists. She can likely read the written word at least at a 5th or 6th grade level, which would not be suggestive of functional illiteracy.

[*Id.*]

**Residual Functional Capacity**

23

Plaintiff contends the ALJ's RFC assessment is inadequate because it fails to sufficiently account for Plaintiff's manipulative limitations.  [Doc. 18 at 16.]  Plaintiff also contends the ALJ relied mainly on the opinion of non-examining state agency physician Dr. Van Slooten and found that his RFC was consistent with Dr. Van Slooten's assessment, however, Plaintiff argues the ALJ's finding contradicts Dr. Van Slooten's opinion that Plaintiff is limited to occasional overhead reaching. [*Id.* at 17.]   Plaintiff argues that her manipulative limitations are consistent with the opinion of long-term treating physician Dr. Keith [*id.*] and that Dr. Keith's opinion was entitled to more than "little weight" [*id.* at 20]. The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff can engage in overhead reaching with her right upper extremity frequently, and Plaintiff has not met her burden in establishing she had greater limitations than the ALJ identified.  [Doc. 20 at 9.] The Commissioner also contends the ALJ properly gave little weight to Dr. Keith's opinion that Plaintiff could not engage in overhead work with weight because Plaintiff's condition improved following rotator cuff surgery. [*Id.*]   The Court agrees with the Commissioner.

The Administration has provided a definition of RFC and explained

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule . . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. *Id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

> Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

Id. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may further erode Plaintiff's ability to work. The Administration addressed the role of nonexertional limitations in an RFC assessment as follows:

25

>Nonexertional capacity considers all work-related limitations and restrictions that do not depend on [a claimant]'s physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses [a claimant]'s abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

>As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions . . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96-8p at 34,476.

### ALJ's Findings

The ALJ limited Plaintiff to medium work with some postural and manipulative limitations in light of problems with her back, neck, and right arm. [R. 26.] The postural limitations accounted for the problems Plaintiff experienced with her lower extremities. [*Id.*] In assessing the Plaintiff's manipulative limitations, the ALJ explained

>While it is evident the claimant underwent rotator cuff surgery in December 2008, it is equally apparent that she had fully recovered by April 2009. The claimant reported to Dr. Wyland in April 2009 that she was feeling well and was not having problems with her right shoulder. An examination revealed the claimant had full range of motion of her shoulder and good strength. Also, her pain was minimal (Exhibit 7F, p.1). Further evidence of her recovery is the fact that the claimant did not complain of right arm pain until she was involved in a motor vehicle accident in March 2010. In fact, the claimant reported to medical personnel at University Medical Group in March

2010 that her shoulder was doing fine until the accident (supra.). In March 2010, a right shoulder x-rays revealed moderate joint disease and bursitis. The claimant also complained of increased pain in the cervical spine as well as her trapezius and shoulder and intermittent paresthesias in her hand. An examination of the cervical spine revealed diffuse paraspinal tenderness to palpation and spasm. She also had limited range of motion of her cervical spine secondary to pain. Spurling's test was painful, but it did not cause any radicular type symptoms. The claimant however had full range of motion with mild pain in her right shoulder. She had 5/5 scaption strength as well as 5/5 internal and external rotation strength. She had no gross instability. Her sensory motor function was intact throughout the right upper extremity. The claimant was diagnosed with joint and neck pain. Treatment notes indicate that her rotator cuff seemed to be doing well. She was administered medication and sent to physical therapy (Exhibit 15F, pp.1-2). From that point forward, the claimant has had minimal treatment for shoulder or cervical pain. The record reveals that her treatment since the accident, at best, has been routine and conservative in nature. She has not had further shoulder or cervical surgery. In fact, as discussed below, most of her treatment after the accident was directed to her back and lower extremities. Thus, there is insufficient evidence to support the claimant's limitations relative to her right shoulder or neck.

[R. 26–27.]

The ALJ noted that

The claimant's daily activities indicate she is not disabled. She testified that she tries to clean up her house a little bit. She stated that she prepares meals, waters her flowers on her porch, does grocery shopping, attends church twice a month and takes care of a cat. She reported to Dr. Ruffing that she is able to care for her personal needs, such as toileting, bathing and feeding, though she does require some assistance with bathing from her husband secondary to her physical limitations. She also reported to Dr. Ruffing that she attends church services, typically twice per month. The claimant is able to go shopping for herself as she is able to walk to the store. She uses cash to pay for the items she is purchasing at the store. She relies on her husband to pay their bills. The claimant stated she does have some friends to socialize with.

27

She stated she can use a telephone to communicate with others. She stated she cannot use a computer. The claimant stated she has someone else order for her in a restaurant. She does participate in meal preparation at home, such as making sandwiches or using the microwave oven. The claimant does participate in light household cleaning, though she qualified she is limited in lifting. She does participate in laundry activities. She does not participate in yard-work (Exhibit 21F). Such daily activities are not typical of a person with a total disability. Also, the claimant testified that she does not need any assistive devices to walk. Cleaning, shopping and attending church require a considerable amount of walking. Preparing meals likewise requires a certain period of standing. The claimant does all of these activities without any assistive devices. Thus, I find that her daily activities militate against her allegations and support the residual functional capacity.

When, as here, there is evidence the claimant is obese, I must consider the effects it has in causing or contributing to the claimant's musculoskeletal, respiratory or cardiovascular impairments (SSR 02-01p). This is based on the Agency's recognition that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. Moreover, SSR 02-01p requires I consider the effects of obesity not only under the listing, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. In this case, I have considered the effects of obesity by finding it to be a medically determinable severe impairment, and by considering the effects of obesity in assessing this claimant's residual functional capacity. While the claimant testified that her weight limits her because she has a tendency to use her left side more than her right side, I find such testimony unpersuasive in showing that her obesity greatly limits her ability to perform physical activities. Thus, I find there is insufficient evidence that the claimant's obesity caused any additional significant limitations. However, considering this impairment, I find the claimant is limited to performing medium work with the postural limitations described above.

[R. 27.]

28

The ALJ also considered and explained his evaluation of the medical opinions of

record.  The ALJ explained

> I assess little weight to Dr. Keith's opinion in Exhibit 2F.  He
> opined in August 2008 that the claimant is not "suitable" for
> doing this type of work anymore and cannot do overhead work
> with weight.  I assume Dr. Keith is referring to the claimant's
> past relevant work as a wax pitcher.  In any event, it is clear
> from the evidence that the claimant's right shoulder injury was
> completely resolved subsequent to the issuance of this opinion.
>
> I have given significant weight to the Physical RFC
> Assessments found at Exhibits 8F, 12F and 17F.  My residual
> functional capacity is consistent with Exhibit 8F, and it is more
> restrictive than 12F and 17F, in that I have determined the
> claimant is limited to occasional crawling.
>
> Dr. Keith opines that the claimant is unable to engage in
> anything more than sedentary work because of multilevel
> lumbar disc disease and rotator cuff derangement (Exhibit
> 20F).  I have given little weight to this opinion.  It is inconsistent
> with the longitudinal medical evidence and the claimant's daily
> activities.  Moreover, his opinion is not supported by his
> medical records.  His records indicate the claimant twice had
> negative straight leg raising.  It also appears from his records
> that he only treated the claimant with medication.  His
> conservative treatment of the claimant and her daily activities
> would not be suggestive of an ability to perform only sedentary
> work.
>
> I have given little weight to the opinion of Dr Esce.  He also
> opines the claimant is unable to engage in anything more than
> sedentary work as a result of lumbar degenerative disc and low
> back pain (Exhibit 22F).  His opinion was submitted after the
> hearing in this matter and after I closed the record on reliance
> of the attorney's assertion that he has no further documentary
> evidence to submit.  I have reviewed the entire record and
> cannot find any medical records indicating he ever treated or
> examined the claimant.  However, for the same reasons that I
> assessed little weight to Dr. Keith's opinion, I make the same
> findings here.

[R. 28.]   The ALJ ultimately gave significant weight to the Physical RFC Assessments of Dr. Van Slooten, Dr. Fass, and Dr. Clarke, noting the RFC the ALJ assigned Plaintiff was consistent with Dr. Van Slooten's assessment and actually more restrictive than Drs. Fass's and Clarke's assessments in that the ALJ found Plaintiff was limited to occasional crawling. [*Id.*]

### Discussion

The ALJ accurately summarized the medical evidence of record and adequately explained his basis for either adopting or rejecting the opinions of record.[6]  In assessing Plaintiff's impairments, the ALJ thoroughly discussed and summarized the medical evidence of record and Plaintiff's activities of daily living.   [R. 21–23.]   In assessing Plaintiff's RFC, the ALJ specifically noted Plaintiff's testimony regarding difficulty with her right arm and lifting, back pain which she experiences whether seated or standing, and her testimony that her weight limits her and causes her to use her left side more than her right. [R. 24.]  The ALJ also considered Plaintiff's testimony that her pain level was an  8 out of 10 although she sat quietly at the hearing and that she used only over-the-counter medications, ice packs, heating pads, and elevated her arm for the pain. [R. 25.]  The ALJ concluded that Plaintiff was relegated to medium work due to her postural and manipulative limitations as well as her obesity; however, he did not believe the objective medical evidence warranted additional limitations. [R. 26.]

---

[6]The Court notes that the ALJ found Plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the RFC. Plaintiff did not challenge the ALJ credibility findings but, rather, challenged the ALJ's explanation with respect to his RFC findings.

With respect to manipulative limitations, the medical evidence consistently showed Plaintiff was limited in her ability to reach.  [R. 294 (limited in reaching in all directions, including overhead, but not limited in handling, fingering or feeling), 365 (limited in reaching in all directions, including overhead) 394 (limited her overhead reaching to frequent, but unlimited in handling, fingering and feeling).]  However, the evidence also supports the ALJ's finding that Plaintiff could engage in frequent overhead reaching.  [*See* R. 394.]  Dr. Keith's opinion that Plaintiff could not do overhead work with weight was made prior to her surgical repair.  [R. 397.] Plaintiff was returned to work with no restrictions after the surgery. [*Id.*]  Dr. Van Slooten's RFC assessment dated June 2009 found Plaintiff capable of occasional overhead reaching.  [R. 294.]  Drs. Fass and Clarke, who provided RFC assessments on November 25, 2009 and September 10, 2010, respectively, noted Plaintiff was capable of frequent overhead reaching.  [R. 365, 394.]  Both doctors noted evidence of record showing Plaintiff exhibited excellent strength and range of motion in her shoulder. [*E.g.* R. 367–68, 396–97.]  Upon weighing the evidence, the ALJ adopted the limitation imposed by Drs. Fass and Clarke.

In evaluating the opinions of Dr. Keith and Neurosurgeon Dr. Phillip G. Esce ("Dr. Esce") that Plaintiff was limited to sedentary work, the ALJ explained that the opinions were entitled to little weight because he found the opinions inconsistent with the longitudinal medical evidence and Plaintiff's daily activities.  Further, the ALJ noted Dr. Keith treated Plaintiff's symptoms conservatively.  The ALJ also discussed that the medical evidence did not include any medical records indicating Dr. Esce ever treated or examined Plaintiff.

While Plaintiff disagrees with the ALJ's weighing of these medical opinions and giving more weight to the opinions of non-treating physicians, the law is clear that the

opinion of a non-treating physician can provide substantial evidence for the ALJ's opinion if it is consistent with the record evidence considered in its entirety. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), as amended (May 5, 1993) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"). Accordingly, the Court finds the ALJ's RFC analysis is supported by substantial evidence.[7]

**Financial Obstacles**

Plaintiff contends the ALJ improperly inferred that Plaintiff was not impaired because she failed to obtain treatment or comply with treatment recommendations without any further investigation. [Doc. 18 at 24.] Plaintiff argues the case law prohibits the ALJ from making such negative findings when the Plaintiff can not afford treatment. [*Id.*] The Commissioner contends, however, that none of the medical evidence contains any mention of an inability to afford medication or even a suggestion that Plaintiff was not prescribed stronger medication because she could not afford it. [Doc. 20 at 14.] At most, the record indicates that Plaintiff had difficulty obtaining a referral to a neurosurgeon—a referral that appears to have ultimately occurred when she saw Dr. Esce. [*Id.*]

The Court notes that at no point during the hearing did Plaintiff testify that she was not able to receive treatment or medication due to the inability to afford it. [*See* R. 35–63.]

---

[7]Further, the Court notes that the ALJ presented the vocational expert ("VE") with a hypothetical question that included all of the limitations of the stated RFC. *See English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir.1993) ("In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment."). In response, the VE concluded Plaintiff would be able to perform past relevant work which precludes a finding of disability.

Plaintiff testified she went to Dr. Keefe every three or four months when she had the money. [R. 51.] Plaintiff did not testify, however, that she was not receiving treatment or was unable to afford medicine that she needed. Here, the ALJ based his decision on the treatment notes and objective testing results in the record which did not support Plaintiff's allegations of disabling limitations. Accordingly, the ALJ did not err in his decision by failing to address Plaintiff's alleged inability to afford medical treatment.

**New Evidence**

Plaintiff contends "the Court is precluded from determining whether there is substantial evidence to support the Commissioner's decision when considering the record as a whole, including the new evidence submitted" to the Appeals Council because it conflicted with the ALJ's findings. [Doc. 18 at 27.] Plaintiff contends the new evidence conflicts with the ALJ's findings in that the new records show pain with straight leg raises. [*Id.*] The Commissioner argues that the new evidence submitted to the Appeals Council does not warrant remand. [Doc. 20 at 16.] The Court agrees with the Commissioner.

In accordance with the Administration's regulations, a claimant is permitted to offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. § 404.968, 404.970(b). The new evidence offered to the Appeals Council is then made part of the record.

As the Fourth Circuit Court of Appeals stated in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made

part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has is permitted to determine whether there is substantial evidence to support the Commissioner's decision. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* The Fourth Circuit Court of Appeals explained that remand under these circumstances is necessary because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id.*

When confronted with new and material evidence, the Appeals Council is to "evaluate the entire record including the new and material evidence." 20 C.F.R. § 404.970(b). After this evaluation, if the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," it should review the entire case and either issue a separate decision or remand the case to the ALJ. *Id.*; §§ 404.967; 404.977(a); 404.979; *Meyer*, 662 F.3d at 705. If after considering the evidence, including the new and material evidence, the Appeals Council finds the ALJ's conclusions are not contrary to the weight of the evidence, the Appeals Council can deny the request for review without articulating its reasons for doing so. *Meyer*, 662 F.3d at 705. However, when the "other record evidence credited by the ALJ conflicts with the new evidence," it is necessary to remand the matter to the trier of fact to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* at 707; *see also*

34

*Creekmore v. Astrue*, No. C/A 5:11-256-RMG, 2012 WL 3834846, at *1 (D.S.C. Sept. 4, 2012) (finding that the Commissioner's "failure to weigh and reconcile the new and material evidence submitted to the Appeals Council to be contrary to the clear holding of the Fourth Circuit" in *Meyer* ).

In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must "review the record as a whole including any new evidence that the Appeals Council specifically incorporated . . . into the administrative record." *Id.* at 704 (alterations in original) (internal quotation marks and citation omitted). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted. *Id.* at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The *Meyer* Court recognized, however, that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence. *See id.* (discussing *Smith v. Chater*, 99 F.3d 635 (4th Cir. 1996)).

### New Evidence at Issue

The Appeals Council noted that it reviewed "Attorney-Supplied medical records from Phillip Esce MD, dated January 12, 2012; Attorney-Supplied medical records from Phillip Esce, MD, dated April 23, 2012, and Attorney-Supplied medical records from David Keith, MD, dated July 2,2012" and found the new information was about a later time (the ALJ's decision was decided for the time period through August 26, 2011) and did not affect the

35

ALJ's decision about whether Plaintiff was disabled beginning on or before August 26, 2011. [R. 2.] The new evidence from 2011, however, was made part of the record at Exhibits 18E, Counsel's Brief; 23F, records dated January 2011 to May 2011 from Dr. Keith; 24F, records dated June 2011 to September 2011 from Upstate Spine and Neurosurgery Center; and 25F, records dated June 2011 to September 2011 from Dr. Esce. [R. 5.]

Upon review of the new evidence the Court notes that Exhibit 23F indicates Plaintiff returned to Dr. Keith on March 4, 2011, regarding her disabling orthopedic conditions "some of which she tells me I was not aware of or at least I did not remember it." [R. 421.] Dr. Keith noted that "we know she has low back pain with bilateral nerve root impingement." [*Id.*] On physical exam, "[s]he has limitations of abduction to less than 90 degrees in the right shoulder. Internal or external rotation is quite limited." [*Id.*] Additionally, she has fairly extreme edema of her thighs bilaterally, right greater than left, and her pain increases with straight leg raises bilaterally." [*Id.*] Dr. Keith noted that "[s]he does have marked limitations. Right now she is uninsured so it is going to be difficult to get her seen by any specialist or to even do any further diagnostic studies." [*Id.*] Exhibit 23F from Dr. Keith indicates Plaintiff also returned to him on May 11, 2011, complaining of pain in her legs and back. [R. 419.] Dr. Keith notes that Plaintiff does not complain of numbness in either leg and that her MRI shows bilateral nerve root impingement. [*Id.*] On examination, Dr. Keith noted that Plaintiff's

> legs are very big particularly the thighs, but unfortunately I think this is obesity that she has developed. She does have some varicose veins and some pitting edema distally. She is reproducibly very tender in her lower back with any straight leg

> raise maneuver.   Knees and hips however, appear to be alright.

[*Id.*]  Dr. Keith referred Plaintiff to a neurosurgeon but noted she was not funded for surgery.  [*Id.*]

On June 14, 2011, Plaintiff presented to Upstate Spine and Neurosurgery Center with complaints of right shoulder and lower back pain.  [R. 437.]  Dr. Esce[8] reviewed her lumbar MRI and performed an examination.  [R. 438.]  Dr. Esce noted that the "presence of lumbar degenerative disc disease is a likely contributor to her low back pain" and that "[i]t is reasonable to recommend physical therapy, which the [Plaintiff] states she is unable to afford due to lack of employment."  [*Id.*] Dr. Esce prescribed medication for back pain, gave her a sheet of back exercises to perform at home, and told her to continue using her brace as needed; there was no surgical indication at this time according to Dr. Esce.  [*Id.*] On June 30, 2011, Dr. Esce also completed a questionnaire concerning Plaintiff.  [R. 416.] Dr. Esce opined Plaintiff was unable to engage in anything more than either sedentary or light work on an 8 hour day, 5 day per week basis considering Plaintiff's MRI scan, antalgic gait, and positive straight leg raise.  [*Id.*]

After the date of the decision, on September 20, 2011, Plaintiff was seen at Upstate Spine and Neurosurgery Center for her complaints of right shoulder and lower back pain. [R. 426.]  Dr. Esce reviewed her lumbar MRI from January 18, 2011 and performed an examination concluding that the presence of lumbar degenerative disc disease is a likely contributor to Plaintiff's low back pain.  [R. 429.]  Dr. Esce noted that it was reasonable to

---

[8]Plaintiff admits that Dr. Esce did not begin treating Plaintiff until June 2011 and his opinion was not submitted until July 2011 which was  after the hearing but before the decision. [R. 207.]

recommend physical therapy but Plaintiff indicated she could not afford it due to lack of employment.  [*Id.*]  Dr. Esce also noted that there was no surgical indication and that Plaintiff should continue using her lumbar brace as needed and should perform exercises at home to strengthen her core which would provide greater long term benefit than extended brace usage.  [*Id.*]

### Discussion

Here, as in *Meyer* and *Creekmore*, the Appeals Council admitted the additional treatment notes of Drs. Keith and Esce, however, Plaintiff has failed to show the new evidence contradicts the other evidence of record considered by the ALJ.  The ALJ specifically found that both Drs. Esce and Keith's opinions were entitled to little weight because they were inconsistent with their own record evidence, Plaintiff's treatment was consistently conservative, and her activities of daily living contradicted her claims of disability.  Upon review of the new evidence submitted, the Court notes that Dr. Esce opined there was no surgical indication for Plaintiff's condition, provided her medication, and suggested a home exercise program to strengthen her core muscles to provide more long-term benefit.  This finding by Dr. Esce is consistent with the ALJ's finding that Plaintiff's impairment is not disabling and can be managed with conservative treatment. The nature and extent of a claimant's treatment are relevant factors in assessing the severity of the claimant's symptoms.  *See* 20 C.F.R. § 404.1529(c)(3).  *See also Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (finding conservative treatment inconsistent with an allegation of disability).  The fact that Dr. Esce found Plaintiff had positive straight leg raises did not require any increase in the level of treatment required.  Thus, the Court

finds the ALJ's decision, even considering the new evidence, is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

<u>S/Jacquelyn D. Austin</u>
United States Magistrate Judge

February 11, 2015
Greenville, South Carolina