

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| SHIRLEY A YOUNG,<br>    Plaintiff, | §<br>§<br>§ |
| vs. | § Civil Action No. 8:13-00365-MGL-JDA<br>§ |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | §<br>§<br>§ |

### ORDER AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS

This is a Social Security appeal in which Plaintiff seeks judicial review of the final decision of Defendant denying Plaintiff's claim for Disability Insurance Benefits (DIB). The parties are represented by excellent counsel. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting to the Court that Defendant's decision be affirmed. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on February 11, 2015, and Plaintiff filed her objections on February 28, 2015. The Court has carefully considered the objections, but finds them to be without merit. Therefore, it will enter judgment accordingly.

Plaintiff alleges that her disability commenced on November 28, 2008, as a result of post rotator cuff surgery, a motor vehicle accident, degenerative joint and disc disease of the legs and back, and obesity. The Social Security Administration denied her claim, both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) after which he issued a decision on August 26, 2011, finding that Plaintiff was not disabled under the Act. The Appeals Council declined review. Plaintiff thereafter filed this action for judicial review.

The Magistrate Judge initially recommended that the case be remanded so that the ALJ could consider additional evidence that Plaintiff submitted to the Appeals Council, which the Magistrate Judge thought they had failed to consider. Thereafter, Defendant provided to the Court an affidavit stating that the Appeals Council had considered the submitted evidence from 2011, and found that the additional evidence failed to provide a basis for changing the ALJ's decision. In regards to the new evidence submitted in 2012, the Appeals Council found that it would not be made a part of the record because Plaintiff submitted it after the ALJ's decision had been issued. Therefore, the Appeals Council returned the 2012 evidence to Plaintiff so that she could use it for a new claim if she decided to do so. The district judge who was assigned to the case at the time remanded the case to the Magistrate Judge for consideration of the newly submitted evidence. As noted above, the Magistrate Judge has since filed this Report suggesting that Defendant's final decision rejecting Plaintiff's claim for DIB be affirmed.

The Agency has established a five-step sequential evaluation process for determining if a

person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to her past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made. The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b). Thus, the Court will address each specific objection to the Report in turn. As provided above, however, the Court need not–and will not–address those objections that fail to point the Court to alleged specific errors in the Report.

First, Plaintiff disagrees with the Magistrate Judge's finding that "the evidence . . . supports the ALJ's finding that Plaintiff could engage in frequent overhead reaching," Objections 1 (quoting Report 31) (internal quotation marks omitted). The Court is unpersuaded. There is substantial evidence in the record to support the ALJ's finding that Plaintiff was able to engage in frequent overhead reaching. For the reasons set forth below, the Court will overrule this objection.

Second, Plaintiff complains of the Magistrate Judge's alleged failure to "address the fact that the ALJ never indicated that he was adopting [the opinions of Dr. Steven Fass and Dr. Hugh Clarke] over Dr. [Dale] Van Slooten's." *Id*. at 2. This is of no moment.

3

The portion of the ALJ's decision from which this objections comes is as follows:

> I have given significant weight to the Physical RFC Assessments found at Exhibits 8F [RFC produced by Dr. Van Slooten], 12F [RFC produced by Dr. Fass], and 17F [RFC produced by Dr. Clark]. My residual functional capacity is consistent with Exhibit 8F [RFC produced by Dr. Van Slooten], and it is more restrictive than 12F [RFC produced by Dr. Fass] and 17F [RFC produced by Dr. Clark], in that I have determined [Plaintiff] is limited to occasional crawling.

Administrative Record 28. Although the ALJ could have done a better job in explaining his rationale of why he was adopting the opinions than he did, a review of the record reveals the rationale as to how he came to the conclusions that he did.

Obviously, Plaintiff would have liked for the ALJ to have accepted the statement that Dr. Van Slooten, made on June 9, 2009, in which he stated that Plaintiff was limited in "[r]eaching all directions (including overhead)." *Id*. at 294. But, Dr. Van Slooten also stated that as Plaintiff "continues on post op therapy, [that he] project[ed] to medium work with continued treatment," *Id*. at 296. As projected by Dr. Van Slooten, over five months later, it appears that Plaintiff's condition had improved such that, in Dr. Cass's RFC, dated November 25, 2009, Dr. Cass stated that Plaintiff was limited to medium work, *Id*. at 363, but that frequent overhead reaching was limited., *Id.* at 365. And then, over fifteen months after Dr. Van Slooten's RFC, Plaintiff appeared to have improved even more such that, in Dr. Clarke's RFC, dated September 10, 2010, he found that Plaintiff "limit right overhead reaching to frequent." *Id*. at 394. He also suggested that she be limited to medium work. *Id*. at 393.

To the extent that the ALJ failed to better explain how he reached the decision that he did, there still remains substantial evidence in the record to justify his decision. His writing more will not change that fact. Therefore, the Court will overrule this objection.

Third, Plaintiff argues that "[t]he Magistrate Judge's acknowledgment of other evidence does not cure the ALJ's failure to satisfy his duty in providing the reviewing court with an explanation that would allow the Court to track the ALJ's reasoning or to ensure that the ALJ considered all relevant evidence." Objections 2-3.

As stated above, there is substantial evidence to support the ALJ's decision on this matter. And, having made a thorough review of the record based on this objection, this Court was able "to track the ALJ's reasoning [and] ensure that the ALJ considered all relevant evidence." *Id*. Thus, the Court will overrule this objection.

Fourth, Plaintiff maintains that the Magistrate Judge is mistaken in stating that the limitations that the ALJ imposed on Plaintiff were from only Drs. Fass and Clarke. According to Plaintiff, the ALJ also opined that he was adopting the limitations of Dr. Van Slooten, as well. Plaintiff also maintains that it was improper for the Magistrate Judge to adopt Defendant's alleged post hoc rational on this issue.

As a preliminary matter, the Court rejects the accusation that the Magistrate Judge adopted the post hoc rationale of Defendant in considering this issue. As explained above, having made a careful review of the record, this Court was able to track the ALJ's reasoning and ensure that the ALJ considered all of the relevant evidence without any assistance from Defendant.

Plaintiff is correct in her assertion that the ALJ opined that he was adopting the limitations of Dr. Van Slooten, as well. As already noted, the ALJ stated, in part, that his "residual functional capacity is consistent with Exhibit 8F [RFC produced by Dr. Van Slooten], and it is more restrictive than 12F [RFC produced by Dr. Fass] and 17F [RFC produced by Dr. Clark], in that I have determined [Plaintiff] is limited to occasional crawling." Administrative Record 28. In light of the

5

discussion above, this objections is of no import. Consequently, the Court will overrule the objection.

Fifth, Plaintiff avows that the Magistrate Judge "does not address the fact that even the ALJ conceded that subsequent injury after this surgery, in 2010, imposed new shoulder problems." Objections 4 (citing Report 26-27). The cogency of this argument eludes the Court.

The fact "that even the ALJ conceded that subsequent injury after this surgery, in 2010, imposed new shoulder problems," *Id*. at 4, suggests to the Court that the ALJ carefully reviewed and considered the evidence before him. The Magistrate Judge quoted that portion of the ALJ's decision in her Report. Report 26-27. The Magistrate Judge also quotes the ALJ as stating that "[T]he record reveals that [Plaintiffs] treatment since the accident, at best, has been routine and conservative in nature." *Id.* at 27 (quoting Administrative Record 27). Therefore, the Court will overrule this objection.

Sixth, Plaintiff objects that "the Magistrate Judge found no error in the ALJ's rejection of Dr. Keith's opinions. Objections 5 (citing Report 31-32). The Court will discuss this objection below.

Seventh. Plaintiff asseverates that the Magistrate Judge failed to address her contention that "[i]mprovement of [Plaintiff's] condition when repetitive work was ceased does not support discounting Dr. Keith's opinion[.]" *Id*.

Even assuming that an improvement of Plaintiff's condition when repetitive work was ceased does not support the discounting the Dr. Keith's opinion, Plaintiff admits that "such improvement, without more, cannot be used to defeat a treating doctor's opinion." *Id*. But, there is more. There are plenty more reasons that the ALJ discounted Dr. Keith's opinion. *See* Administrative Record 28-29. Thus, this objection will be overruled..

Eighth, Plaintiff declares that the Magistrate Judge failed to adequately address Plaintiff's contention that "[t]he's ALJ's general statement of inconsistency is insufficient to discount Dr. Keith's opinions[.]" Objections 6. In addressing this objection the Magistrate Judge stated that, "In evaluating the opinions of Dr. Keith and Neurosurgeon Dr. Phillip G. Esce ("Dr. Esce") that Plaintiff was limited to sedentary work, the ALJ explained that the opinions were entitled to little weight because he found the opinions inconsistent with the longitudinal medical evidence and Plaintiff's daily activities." Report 31.

Concerning the ALJ's decision to give little weight to Dr. Keith's and Neurosurgeon Dr. Phillip G. Esce's opinions that Plaintiff should be limited to sedentary work, the Court first notes that, in evaluating medical opinions, an ALJ should examine "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). An ALJ, however, "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

In the ALJ's opinion, he set forth Plaintiff's medical history in great detail. *See* Administrative Record 21-23. And, based on the whole record, not just small snippets of it, he correctly found that there was persuasive contrary evidence to that which was provided by Dr. Keith and Dr. Esce. *See Id* at 28-29. He also details the weight that he assigned to Dr. Keith and Dr. Esce opinions, concluding that the residual functional capacity assessment that he made in regards to Plaintiff "is supported by the longitudinal medical evidence and the claimant's daily activities." *Id*. 28-29. Having reviewed the record, the Court is of the same accord.

7

Regarding the ALJ's decision to discount the physicians' opinions based on Plaintiff's daily activities, the ALJ stated as follows:

> [Plaintiff's] daily activities indicate she is not disabled. She testified that she tries to clean up her house a little bit. She stated that she prepares meals, waters her flowers on her porch, does grocery shopping, attends church twice a month and takes care of a cat. She reported to Dr. Ruffing that she is able to care for her personal needs, such as toileting, bathing and feeding, though she does require some assistance with bathing from her husband secondary to her physical limitations. She also reported to Dr. Ruffing that she attends church services, typically twice per month. [Plaintiff] is able to go shopping for herself as she is able to walk to the store. She uses cash to pay for the items she is purchasing at the store. She relies on her husband to pay their bills. [Plaintiff] stated she does have some friends to socialize with. She stated she can use a telephone to communicate with others. She stated she cannot use a computer. [Plaintiff] stated she has someone else order for her in a restaurant. She does participate in meal preparation at home, such as making sandwiches or using the microwave oven. [Plaintiff] does participate in light household cleaning, though she qualified she is limited in lifting. She does participate in laundry activities. She does not participate in yard-work. Such daily activities are not typical of a person with a total disability. Also, the claimant testified that she does no t need any assistive devices to walk. Cleaning, shopping and attending church require a considerable amount of walking. Preparing meals likewise requires a certain period of standing. [Plaintiff] does all of these activities without any assistive devices. Thus, I find that her daily activities militate against her allegations and support the residual functional capacity.

Administrative Record 27 (citation omitted). The ALJ is allowed to consider Plaintiff's wide range of activities in determining that she is not disabled. *See Mink v. Apfel*, 215 F.3d 1320 (4th Cir. 2000) (noting with approval that "[t]he ALJ concluded that because [the plaintiff] retained the ability to participate in a wide range of daily activities, she was not disabled by her various impairments. (unpublished). It strains the bounds of credulity to admit on the one hand that one participates in all of these daily activities, and then on the other hand, claim that she is disabled under the Act.

8

Contrary to Plaintiff's assertion, both the Magistrate Judge's Report and the ALJ's decision are more than sufficient to explain why the ALJ discounted Dr. Keith's and Dr. Esce's opinions. Hence, the Court will overrule this objection.

Ninth, Plaintiff states that the Magistrate Judge failed to address "an absence of straight leg raise [test]." Objections 7.

A straight-leg-raise test is

> a test used by your physician to determine if the leg pain that you're experiencing is coming from your back. It is important as a patient that you relax.
>
> Your physician will raise your leg into the air. If you experience reproducible pain in your leg and your low back, this may indicate that the symptoms you're having are coming from a potentially herniated disc in your low back or from irritation and inflammation around the nerves coming from your lower back.

http://abcnews.go.com/Health/CommonPainProblems/story?id=4047905 (last visited March 16, 2015). A negative straight leg raise indicates that there is no pain and a positive straight leg raise indicates that there is pain.

In his objections, Plaintiff argues that

> in finding Dr. Keith's opinion unsupported by his records, the ALJ specifically referred to negative straight leg raise. However, Dr. Keith's opinions of limitation to no more than sedentary work was specifically based on Young's MRI which showed multilevel degenerative disc disease with moderately advanced changes at the L4-L5 level and multilevel acquired spinal encroachment which appeared to be slightly worse at the L5-S1 level as evidenced by abutment of the exiting L5 nerve roots due to combined decreased disc height and facet joint hypertrophy. R 403-404. Therefore, despite an absence of straight leg raise, Dr. Keith had ample objective evidence supporting his opinion.

Objections 7. That Plaintiff had two negative straight leg raising was cited by the ALJ as one of the many reasons that he was discounting Dr. Keith's medical opinion. But, it certainly was not the only reason. Suffice it to say, there is substantial evidence in the record to support the ALJ's decision to discount Dr. Keith's opinion, even without consideration of the two negative-straight-leg raises. As such, the Court will overrule this objection.

Tenth, Plaintiff contends that the Magistrate Judge erred in her suggestion that "Dr. Keith's course of treatment . . . . negates his opinions[.]" Objections 8.

Courts have considered a claimant's course of treatment in determining whether one is disabled. *See, e.g., Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 66 (4th Cir. 2014) (unpublished) (observing with approval the ALJ's consideration of the conservative nature of the plaintiff's treatment, among other things, in denying the plaintiff's claim for benefits); *Hoke v. Chater*, 74 3d 1231 (4th Cir. 1996) (unpublished) (finding that the ALJ did not err in denying benefits and noting, among other things, that the plaintiff received only conservative treatment).

Here, however, Plaintiff argues that her course of treatment was conservative given her inability to pay for more aggressive treatment. But, as discussed below, the record in this case suggests otherwise. Therefore, the Court will overrule this objection.

Eleventh, Plaintiff complains that the Magistrate Judge erred in finding that "the ALJ did not err in his decision by failing to address Plaintiff's alleged inability to afford medical treatment." Objections 8 (quoting Report 33). According to the Magistrate Judge,

> Plaintiff contends the ALJ improperly inferred that Plaintiff was not impaired because she failed to obtain treatment or comply with treatment recommendations without any further investigation. Plaintiff argues the case law prohibits the ALJ from making such negative findings when the Plaintiff can not afford treatment.

10

> [Defendant] contends, however, that none of the medical evidence contains any mention of an inability to afford medication or even a suggestion that Plaintiff was not prescribed stronger medication because she could not afford it. At most, the record indicates that Plaintiff had difficulty obtaining a referral to a neurosurgeon—a referral that appears to have ultimately occurred when she saw Dr. Esce..
>
> The Court notes that at no point during the hearing did Plaintiff testify that she was not able to receive treatment or medication due to the inability to afford it. Plaintiff testified she went to Dr. [Keith] every three or four months when she had the money. Plaintiff did not testify, however, that she was not receiving treatment or was unable to afford medicine that she needed. Here, the ALJ based his decision on the treatment notes and objective testing results in the record which did not support Plaintiff's allegations of disabling limitations. Accordingly, the ALJ did not err in his decision by failing to address Plaintiff's alleged inability to afford medical treatment.

Report 32-33. (citations omitted). Having made a review of the record, the Court is of the opinion that the Magistrate Judge is correct on this point. Plaintiff's lack of financial resources was not an impediment to her receiving the medical treatment that she needed. Thus, the Court will overrule this objection.

Twelfth, and related to Plaintiff's eleventh objection, according to Plaintiff., the Magistrate Judge erred in her claim that "at no point during the hearing did Plaintiff testify that she was not able to receive treatment or medication due to the inability to afford it." Objections 9 (quoting Report 32) (internal quotation marks omitted).

According to the transcript from the hearing, when Plaintiff was asked how often she saw Dr. Keith, she responded: "Oh, I try to at least go every three or four months and when we have–when I have money, see, because I don't work and my husband, he's disabled. He's blind and he don't get a check but once a month. We have it kind of hard, sir." Administrative 51-52. Plaintiff also cites

11

to several examples of when Plaintiff was allegedly denied treatment because of her inability to pay.

But, as already noted, Plaintiff testified she went to Dr. Keith every three or four months when she had the money. Plaintiff did not testify, however, that she was not receiving treatment or was unable to afford medicine that she needed. A comprehensive review of the record in this case bears that out. Accordingly, this objection will be overruled.

Thirteenth, Plaintiff disputes the Magistrate Judge's finding that "the ALJ's decision, even considering the new evidence, is supported by substantial evidence." Objections 11 (quoting Report 38-39) (internal quotation marks omitted). Plaintiff also opposes the Magistrate Judge's statement that "the Appeals Council admitted the additional treatment notes of Drs. Keith and Esce, however, Plaintiff has failed to show the new evidence contradicts the other evidence of record considered by the ALJ." Objections (quoting Report 38) (internal quotation marks omitted).

As the Magistrate Judge found, however,

> the Appeals Council admitted the additional treatment notes of Drs. Keith and Esce, however, Plaintiff has failed to show the new evidence contradicts the other evidence of record considered by the ALJ. The ALJ specifically found that both Drs. Esce and Keith's opinions were entitled to little weight because they were inconsistent with their own record evidence, Plaintiff's treatment was consistently conservative, and her activities of daily living contradicted her claims of disability. Upon review of the new evidence submitted, the Court notes that Dr. Esce opined there was no surgical indication for Plaintiff's condition, provided her medication, and suggested a home exercise program to strengthen her core muscles to provide more long-term benefit. This finding by Dr. Esce is consistent with the ALJ's finding that Plaintiff's impairment is not disabling and can be managed with conservative treatment. The nature and extent of a claimant's treatment are relevant factors in assessing the severity of the claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3). *See also Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (finding conservative treatment inconsistent with an allegation of disability). The fact that Dr. Esce found Plaintiff had positive straight leg raises

> did not require any increase in the level of treatment required. Thus, the Court finds the ALJ's decision, even considering the new evidence, is supported by substantial evidence.

Report 38-39. Inasmuch as the Court agrees with the Magistrate Judge on this issue, it will overrule this objection without further discussion. There is really nothing more to say. Moreover, having made a rigorous review of the entire record in this case, the Court rejects Plaintiff's accusations that the Magistrate Judge adopted Defendant's post hoc rationale on these issues. Consequently, the Court will overrule this objection.

Finally, the Court has considered Plaintiff's remaining objections and finds them to be without merit. As a result, the Court will overrule those objections, as well.

It is Plaintiff's duty to both produce evidence and prove that she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). And, it is the duty of the ALJ, not this Court, to make findings of fact and to resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Under the substantial evidence standard . . . ,we must view the entire record as a whole. Additionally, the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

In sum, the Court holds that there is substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled under the Act during the relevant time period. And, the determination is reasonable. To the extent that the ALJ could have done a better job in explaining his decision, because the ALJ's decision is overwhelmingly supported by the record, to remand the case to

Defendant would be a waste of time and resources. *See Bishop v. Comm'r of Soc. Sec.*, 583 Fed. App'x 65, 67 (4th Cir. 2014) ("[I]f the [ALJ''s] decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.") (citation and internal quotation marks omitted)). Therefore, the Court will affirm Defendant's decision to deny DIB to Plaintiff.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report to the extent that it does not contradict this Order, and incorporates it herein. Therefore, it is the judgment of the Court that Defendant's final decision denying Plaintiff's claim for DIB is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 16th day of March 2015, in Spartanburg, South Carolina.

s/ Mary G. Lewis
MARY G. LEWIS
UNITED STATES DISTRICT JUDGE
